USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  6/10/2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
                                                        :
ADRIAN KHAPESI,                                         :
                                                        :        13 Civ. 4391 (KBF)
                                    Plaintiff,          :
                                                        :        OPINION & ORDER
                   -v-                                  :
                                                        :
THE CITY OF NEW YORK, et al.,                           :
                                                        :
                                    Defendants.         :
-----------------------------------------------------------X

KATHERINE B. FORREST, District Judge:

On June 24, 2013, plaintiff Adrian Khapesi, at that time proceeding pro se,

filed this action against defendants the Commissioner of the New York City

Department of Corrections, Kevin Green, the New York City Department of

Corrections, the City of New York ("the City"), the Warden of the George Motchan

Detention Center ("GMDC"), and the Warden of the Robert N. Davoren Complex

("RNDC"), pursuant to 42 U.S.C. § 1983.[1]  (ECF No. 2.)

Plaintiff thereafter obtained counsel, and on December 14, 2013, plaintiff's

counsel entered a notice of appearance.  (ECF No. 17.)  On January 6, 2014, plaintiff

filed an amended Complaint against all of the following defendants:  Emmanuel

Bailey, former Warden of RNDC; Joandrea Davis, Warden of GMDC; Larry Davis,

Chief of Department, New York City Department of Correction ("DOC" or "the

Department"); Florence Finkle, Deputy Commissioner of the Office of Excellence,

DOC; Kevin Green, Chaplain, DOC; Archana Jayaram, Former Associate

_____

[1] Both the GMDC and the RNDC are New York City prison facilities located on
Rikers Island.

1

Commissioner of Programs and Discharge Planning Services, DOC; New York City Department of Correction Officers John and Julie Does (individually), New York City Department of Correction Supervisors and Commanders Richard and Rachel Roes, New York City Department of Corrections Officers John and Julie Does (and/or in their official capacities, jointly and severally), (the names John and Julie Does, as well as Richard and Rachel Roes being fictitious, as the names of the defendants are presently unknown); Dora B. Schriro, Commissioner of the DOC; and the City.  (ECF No. 19.)

On March 3, 2014, the City filed a motion to dismiss (ECF No. 25), and on March 26, 2014, defendants Emmanuel Bailey, Joandrea Davis, Larry Davis, Florence Finkle, Archana Jayaram, and Dora B. Schriro ("the DOC defendants") filed their own motion to dismiss (ECF No. 41).  Both motions became fully briefed on May 12, 2014.[2]

For the reasons set forth below, the Court hereby GRANTS both the City and the DOC defendants' motions to dismiss.

## I.     BACKGROUND

The Court "accept[s] all factual allegations in the Complaint as true and draw[s] inferences from those allegations in the light most favorable to the plaintiff."  Jaghory v. New York State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997).

---

[2] Defendant Green has joined neither motion and as of now is representing himself pro se.

On September 25, 2010, at age 18, plaintiff – who characterizes himself as a gender non-conforming gay man – was admitted to the adolescent wing of the RNDC. (Am. Compl. ¶¶ 36, 38.)  On December 14, 2010, "in the hopes of deepening his faith," plaintiff attended a religious service led by defendant Green, who conducted Protestant religious services and religious counseling for adolescents at Rikers Island.  (Id. ¶¶ 15, 39.)

After the service, Green sought out plaintiff and requested that he attend private counseling sessions in his office.  (Id. ¶ 40.)  From December 15, 2010 to April 28, 2011, plaintiff met with Green for unlimited, unmonitored one-on-one "counseling" sessions once or twice per week. (Id. ¶¶ 41, 84, 85, 89.)  According to plaintiff, the former warden of the RNDC, defendant Bailey, and DOC officers authorized the delivery of plaintiff to Green's office for these sessions.  (Id. ¶ 41.)

Within two weeks of the initial counseling session, Green began inquiring about plaintiff's sexual history with other men.  (Id. ¶ 43.)  Despite plaintiff's objections, Green continued to ask plaintiff questions of a sexual nature.  (Id. ¶ 44.)  Defendant Green revealed information about his own sexual conduct and told plaintiff that he often purchased sex from gay and transgender young people.  (Id.)

During these sessions, Green allegedly forced plaintiff to engage in sexual conduct.  (Id. ¶ 53.)  When plaintiff refused, defendant Green threatened plaintiff with physical violence and disciplinary retaliation.  (Id.)  Beginning March 2011, Green ordered plaintiff to perform oral sex on him.  (Id. ¶ 58.)  When plaintiff

refused, Green threatened plaintiff with removal from protective custody and into placement in the facility's general population.  (Id.)

On occasion, certain friends of plaintiff, specifically gay and transgender adolescent inmates, accompanied plaintiff to Green's office.  (Id. ¶ 54.)  Defendant Green allegedly engaged in sexual abuse against these individuals, as well.  (Id. ¶¶ 54-55.)

As a result of defendant Green's conduct, plaintiff committed forms of self-harm; he also experienced suicidal thoughts.  (Id. ¶¶ 60-61.)  Plaintiff suffered from anorexia (for which he was treated by medical staff) and experienced "acute episodes of obsessive thoughts, dreams, flashbacks, physical numbness, hyper arousal, anxiety, panic, emotional numbness, major depressive episodes, and anger" following each inappropriate interaction with defendant Green.  (Id. ¶¶ 62-63.)

On April 28, 2011, plaintiff was transferred to the George R. Vierno Center ("GRVC").  (Id. ¶ 64.)  Plaintiff had no further contact with defendant Green during this period.  (Id.)  In October 2011, plaintiff completed his sentence and was released.  (Id. ¶ 65.)

On March 30, 2013, plaintiff was admitted to the GMDC after being arrested the prior day.  (Id. ¶¶ 67-68.)  Defendant Green was present in the intake area at the time plaintiff was being processed; Green approached plaintiff and said, "I will find you."  (Id. ¶ 69.)  On April 15 or 16, 2013, defendant Green entered plaintiff's cell and requested that plaintiff expose himself.  (Id. ¶ 73.)  When a DOC officer

walked into the housing area, defendant Green moved to the other side of the housing area to avoid discovery.  (Id. ¶ 74.)

Shortly thereafter, plaintiff was ordered to stand in a hallway and wait for an escort to transport him to a different facility – defendant Green allegedly walked up to him, pushed him against the hallway wall, told him to be quiet "while shoving his hands down the plaintiff's pants and groping his buttocks roughly."  (Id. ¶ 76.) When a DOC officer was heard approaching, Green left abruptly.  (Id. ¶ 77.)

Plaintiff has not encountered defendant Green since the March 30, 2013 encounter.  (Id. ¶ 78.)

Plaintiff now brings the following claims pursuant to 42 U.S.C. § 1983:[3]  (1) cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments; (2) violation of plaintiff's Equal Protection rights under the Fourteenth Amendment, based on plaintiff's sex and sexual orientation; (3) denial of plaintiff's right to religious counseling under the First Amendment; (4) failure to intervene; (5) municipal liability; and (6) supervisory liability.[4]  Plaintiff also brings certain pendant state law claims.[5]

---

[3] Plaintiff alleges various violations of 42 U.S.C. § 1983 itself, but § 1983 is, of course, not a violable constitutional right.

[4] Plaintiff's claim for supervisory liability is brought pursuant to 42 U.S.C. §§ 1981 and 1983.

[5] Plaintiff brings the following state law claims:  (1) discrimination in violation of N.Y. CLS Civ. R. § 40-c; (2) negligent hiring and retention; and (3) negligent training and supervision.  Plaintiff also brings state law assault and battery claims against defendant Green.

II.     STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a Complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In other words, the Complaint must allege "enough facts to state a claim to relief that is plausible on its face." Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir. 2010) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In applying this standard, the Court accepts as true all well-pled factual allegations, but does not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." Id.  The Court gives "no effect to legal conclusions couched as factual allegations." Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007).

III.    DISCUSSION

The City moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss all claims against it.  The City contends that plaintiff's § 1983 allegations against it for municipal liability fail because plaintiff has not sufficiently

6

alleged the existence of a policy or custom of failing to protect inmates from sexual abuse by prison clergy.  More specifically, the City contends that plaintiff has failed to allege facts supportive of an inference that the City was on notice that Green posed a threat to plaintiff's constitutional rights and that its policies and practices were insufficient to protect plaintiff from that threat.

The City argues that plaintiff's state law claims against it fail because:  (1) plaintiff's negligence claim fails to comply with New York General Municipal Law § 50-e; (2) the Complaint fails to sufficiently allege that the City was on notice of defendant Green's purported propensity to engage in the accused misconduct; (3) the City cannot be held responsible under a <u>respondeat superior</u> theory because defendant Green was acting outside the scope of his employment; and (4) plaintiff has failed to allege facts supportive of discrimination on the basis of plaintiff's  sex, sexual orientation, and/or disability.

Similarly, the DOC defendants have moved for dismissal of all claims against them on the basis that plaintiff has failed to allege that the DOC defendants were or reasonably should have been on notice of the threat posed by defendant Green and that their policies and practices were insufficient to protect against that harm. The DOC defendants further contend that plaintiff has not made out a colorable state law claim of discrimination because there are no facts to support an inference of discrimination on the basis of plaintiff's sex, sexual orientation, and/or disability.

a. § 1983 Legal Framework

    i. Municipal Liability

In order to hold a municipality liable pursuant to § 1983, "the governmental body itself [must] 'subject[]' a person to a deprivation of rights or 'cause[]' a person 'to be subjected' to such deprivation." Connick v. Thompson, – U.S. – , 131 S.Ct. 1350, 1359 (2011) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978)). Municipalities may not be held "vicariously liable under § 1983 for their employees' actions;" municipalities are "responsible only for 'their own illegal acts.'" Id. (quoting Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986)).  Put another way, to hold a municipality liable for a § 1983 claim, a plaintiff must ultimately prove that an official municipal policy or custom caused the constitutional injury.  Id.

To make out a colorable claim of municipal liability, a plaintiff must allege: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007) (internal quotation marks and citation omitted).

"An 'official policy or custom' may be established through the official acts of city lawmakers or 'those whose edicts or acts may fairly be said to represent official policy' or by a pattern of misconduct that is sufficiently 'persistent or widespread as to compel the conclusion that the local government acquiesced in or tacitly authorized its subordinates' unlawful actions." Carpenter v. City of New York, No. 11 Civ. 8414, 2013 WL 6196968, at *9 (S.D.N.Y. Nov. 27, 2013) (citing Monell, 436 U.S. at 694 and Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007) (alterations

8

omitted); see also Patterson v. Cnty. of Oneida, 375 F.3d 206, 226 (2d Cir. 2004).

"Official municipal policy includes the decisions of a government's lawmakers, the

acts of its policymaking officials, and practices so persistent and widespread as to

practically have the force of law." Connick, 131 S.Ct. at 1359.

A failure to act, train, or supervise cannot constitute a municipal custom or

policy unless "the need to act is so obvious, and the inadequacy of current practices

so likely to result in a deprivation of federal rights, that the municipality or official

can be found deliberately indifferent to the need." Id. at 192 (citing City of Canton,

489 U.S. at 390); Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 126 (2d Cir.

2004) (Sotomayor, J.) (explaining that "where a policymaking official exhibits

deliberate indifference to constitutional deprivations caused by subordinates, such

that the official's inaction constitutes a deliberate choice, that acquiescence may be

properly thought of as a city policy or custom that is actionable under § 1983")

(internal quotation marks omitted).

The "deliberate indifference" standard is a "stringent standard of fault."

Connick, 131 S.Ct. at 1360 (internal quotation marks and citation omitted).

"[D]eliberate indifference may be inferred where the need for more or better

supervision to protect against constitutional violations was obvious, but the

policymaker failed to make meaningful efforts to address the risk of harm to

plaintiffs." Cash v. County of Erie, 654 F.3d 324, 334 (2d Cir. 2011) (internal

quotation marks and citations omitted).  As such, municipal liability cannot be

shown where the unconstitutional conduct is "rare or unforeseen." Walker v. City of

New York, 974 F.2d 239, 297 (2d Cir. 1992); see also Connick, 131 S.Ct. at 1360

(2011); City of Canton, 489 U.S. at 396 (O'Connor, J., concurring in part) ("Where a

§ 1983 plaintiff can establish that the facts available to city policymakers put them

on actual or constructive notice that the particular omission is substantially certain

to result in the violation of the constitutional rights of their citizens, the dictates of

Monell are satisfied").

Thus, a key question is whether the allegations plausibly "demonstrate that

the policymaker's inaction was the result of conscious choice and not mere

negligence." Cash, 654 F.3d at 334 (internal quotation marks and citation omitted);

see also Amnesty Am., 361 F.3d at 128 (explaining that "plaintiffs' evidence must

establish only that a policymaking official had notice of a potentially serious

problem of unconstitutional conduct, such that the need for corrective action or

supervision was obvious, and the policymaker's failure to investigate or rectify the

situation evidences deliberate indifference, rather than mere negligence or

bureaucratic inaction") (internal quotation marks and citation omitted).[6]

    ii.  Supervisory Liability

"'It is well settled in this Circuit that personal involvement of defendants in

alleged constitutional deprivations is a prerequisite to an award of damages under §

---

[6] Characterizing the inquiry another way, the Second Circuit has set forth the
following articulation of a deliberate indifference claim:  "(1) a policymaker knows to
a moral certainty that city employees will confront a particular situation; (2) the
situation presents employees with a difficult choice of the sort that training or
supervision will make less difficult, or there is a history of employees mishandling
the situation; and (3) the wrong choice by the city employee will frequently cause
the deprivation of a citizen's constitutional rights." Wray, 490 F.3d at 195-96
(internal quotation marks and citation omitted).

1983.'"  Spavone v. New York State Dep't of Corr. Servs., 719 F.3d 127, 135 (2d Cir.

2013) (quoting Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (internal

quotation marks omitted)); see also Grullon v. City of New Haven, 720 F.3d 133,

138-39 (2d Cir. 2013) (citations omitted); Farrell v. Burke, 449 F.3d 470, 484 (2d

Cir. 2006).  "A defendant's status as warden or commissioner of a prison, standing

alone, is . . . insufficient to establish personal involvement under section 1983."

Walker v. Schriro, No. 11 Civ. 9299, 2013 WL 1234930, at *15 (S.D.N.Y. Mar. 26,

2013) (citations and internal quotation marks omitted); see also Black v. Coughlin,

76 F.3d 72, 74 (2d Cir. 1996).

 The Second Circuit held in Colon v. Coughlin that:

> The personal involvement of a supervisory defendant may
> be shown by evidence that:  (1) the defendant participated
> directly in the alleged constitutional violation, (2) the
> defendant, after being informed of the violation through a
> report or appeal, failed to remedy the wrong, (3) the
> defendant created a policy or custom under which
> unconstitutional practices occurred, or allowed the
> continuance of such a policy or custom, (4) the defendant
> was grossly negligent in supervising subordinates who
> committed the wrongful acts, or (5) the defendant
> exhibited deliberate indifference to the rights of inmates
> by failing to act on information indicating that
> unconstitutional acts were occurring.

58 F.3d at 873.  District courts in the Second Circuit have disagreed as to whether

all five factors survive following Ashcroft v. Iqbal, 556 U.S. 662 (2009).  See, e.g.,

Jones v. The Roosevelt Island Operating Corp., No. 13 Civ. 2226, 2013 WL 6504428,

at *4 (S.D.N.Y. Dec. 11, 2013) (comparing cases); compare Rivera v. Metro. Transit

Auth., 750 F. Supp. 2d 456, 462 (S.D.N.Y. 2010) and Bellamy v. Mt. Vernon Hosp.,

No. 07 Civ. 1801, 2009 WL 1835939, at *4 (S.D.N.Y. June 26, 2009) (holding that only the first and part of the third <u>Colon</u> categories apply post-<u>Iqbal</u>), <u>with</u> <u>Delgado</u> <u>v. Bezio</u>, No. 09 Civ. 6899, 2011 WL 1842294, at *9 (S.D.N.Y. May 9, 2011) <u>and</u> <u>Qasem v. Toro</u>, 737 F. Supp. 2d 147, 151 (S.D.N.Y. 2010) (holding that all five <u>Colon</u> categories still apply, at least under certain circumstances).[7]

  iii. <u>Analysis</u>

   1. <u>Municipal Liability</u>

  Plaintiff's claim that the City had a pattern and practice of failing to protect inmates from sexual abuse by facility staff and/or chaplains is inadequately supported by the factual allegations. (Am. Compl. ¶¶ 79-95, 118.) To support this claim, plaintiff alleges that facility policy allowed unlimited one-on-one counseling visits between inmates and defendant Green and other prison chaplains, that religious counseling offices lacked surveillance cameras and only had a single bathroom, and that sessions were not monitored. (<u>Id.</u> ¶¶ 89, 91.) According to plaintiff, the routine failure to monitor clergy-inmate interactions establishes a pattern or practice of unconstitutional conduct on the part of the City.

  Additionally, plaintiff argues that the City condoned visits by defendant Green and other chaplains to inmate housing areas and cells without supervision – in direct contravention of Department policy. (<u>Id.</u> ¶¶ 92-94.) He contends that facility correctional officers witnessed "frequent and unaccompanied visits to inmate

---

[7] This Court need not reach the impact of <u>Iqbal</u> on these categories because the Complaint fails to adequately plead personal involvement by the DOC defendants for the reasons stated herein.

housing areas, including cell visits, yet repeatedly failed to comply with the Department policy to station a security officer at a discreet distance from the cell during a cell visit by a Department Chaplain." (Id. ¶¶ 92-93.)  Plaintiff argues that the widespread failure to adhere to Department policy with respect to chaplain visits to inmate housing areas and cells resulted in a custom and practice of unconstitutional behavior on the part of the City.  (Id. ¶¶ 92-94.)

These allegations are insufficient to support a claim for municipal liability under § 1983.

First, there are no allegations supporting an inference that the City's alleged failure to protect inmates from sexual abuse was the result of the "the acts of [the City's lawmakers or] policymaking officials" or "practices so persistent and widespread as to practically have the force of law."  Connick, 131 S.Ct. at 1359 (citations omitted).  While plaintiff alleges in conclusory fashion that the sexual abuse was widespread (see Am. Compl. ¶¶ 87, 119), the specific factual allegations only support a plausible inference that the sexual abuse was perpetrated by defendant Green and that plaintiff was his primary victim.  Plaintiff does not allege that other facility staff members engaged in the sexual abuse of inmates, nor that Green's abuse was directed toward a wide swath of inmates.[8]  Compare Liang v.

---

[8] Although plaintiff does allege that certain of his peers were sexually abused, plaintiff contends that these incidents occurred in connection with the abuse of plaintiff.  (See Am. Compl. ¶ 54.)  Moreover, while the alleged statements made by correctional officers regarding their suspicions suggest that they believed the incidents to be widespread (see id. ¶¶ 84-85 (for example, "You know the word about you guys and the Reverend.  We find it funny he is coming to get you all and no one else.")), plaintiff's factual allegation is that three correctional officers had notice of

City of New York, No. 10 Civ. 3089, 2013 WL 5366394, at \*16 (E.D.N.Y. Sept. 24,

2013) (dismissing plaintiff's municipal liability claim where plaintiff's "allegations

regarding an unofficial practice or custom are limited to the actions of specific

detectives in a single police unit and factually supported only by a pleader's

perceptions of his own experience") and Giaccio v. City of New York, 502 F. Supp. 2d

380, 389 (S.D.N.Y. 2007) (dismissing plaintiff's claim where the Complaint alleged

three (and identified two) instances of authorized disclosure of drug tests as

insufficient to make out a pattern or practice of unconstitutional conduct), aff'd 308

F. App'x 470 (2d Cir. 2009), with Turpin v. Mailet, 619 F.2d 169, 202 (2d Cir. 1980)

(noting that "a single, usually brutal or egregious beating administered by a group

of municipal employees may be sufficiently out of the ordinary to warrant an

inference that it was attributable to inadequate training or supervision") (emphasis

added) and Bertuglia v. City of New York, 839 F. Supp. 2d 703, 738 (S.D.N.Y. 2012)

(denying the City's motion to dismiss where the complaint "points to over fifteen

cases where City prosecutors allegedly committed misconduct, and alleges the

existence of many more such cases in the form of unpublished opinions") and

Michael v. Cnty. of Nassau, No. 09 Civ. 5200, 2010 WL 3237143, at \*4-5 (E.D.N.Y.

Aug. 11, 2010) (allowing plaintiff's municipal liability claim to proceed where the

allegations consisted of "multiple incidents over a long, continuous period of time"

that involved "multiple officers").

---

the suspected wrongdoing (two based on their own comments and one who had been
notified via a complaint made by another inmate).  These allegations are
insufficient to sustain an inference of a "pattern or practice."

Similarly, plaintiff fails to allege that the City's failure to enforce its policy of monitoring staff during housing unit visits was so widespread as to constitute a "pattern or practice" of unconstitutional conduct.  The purported failure to monitor staff during housing unit visits is limited to an unspecified number of instances at RNDC and two instances during the course of one day at GMDC.  All purported unmonitored housing unit visits involved plaintiff and Green – no other staff members or inmates were allegedly involved or affected.  In fact, the allegations suggest that there was at least some monitoring that occurred; at times, Green had to hide or stop the alleged misconduct as a result of correctional officers' nearby presence.  Without more, the Court cannot plausibly infer a persistent and widespread failure to enforce its policy of monitoring staff visits to housing areas.  See Reynolds, 506 F.3d at 193 (citations omitted).

With respect to plaintiff's allegation that the City has a policy of failing to monitor clergy-inmate sessions, this contention again does not amount to an actionable pattern or practice.  As explained below, plaintiffs have failed to allege that the City was on notice that its clergy needed to be monitored to prevent unconstitutional conduct.  Plaintiff cannot make out a colorable claim on this basis.[9]

---

[9] Plaintiff does not clearly allege that the City has a policy and practice of failing to train its clergy, but to the extent he seeks to put forth such a claim, this claim too must fail.  Put simply, this is not a situation in which additional training of Green and the other clergy would have prevented the conduct alleged.  Indeed, the facts as alleged illustrate that Green knew his conduct was impermissible and took steps to evade discovery.

2.  Notice

As explained, plaintiff must allege that the City made a "conscious choice" not to act; "mere negligence" is not enough to make out a colorable § 1983 claim for municipal liability.  Cash, 654 F.3d at 334 (citation omitted).  In this case, plaintiff's allegations are insufficient to suggest that the relevant lawmakers/policymakers were on notice that certain policies and practices amounted to (or caused) constitutional violations.

Plaintiff contends that the City was on notice of the threat created by defendant Green because of the existence of a New York State law that proscribes sexual contact between inmates and correctional officers.  Plaintiff cites Cash v. County of Erie, which explains that New York State law "recognize[s] the moral certainty of guards confronting prisoners in sexually tempting circumstances with such a frequent risk of harm to prisoners as to require a complete prohibition of any sexual activity."  654 F.3d 324, 335 (2d Cir. 2011).  The Second Circuit went on to explain:

> Thus, the question presented . . . is not whether defendants should have realized the need for such a prohibition, but whether defendants could rely simply on guards' awareness of these criminal laws (and ECHC policies implementing them) to deter sexual exploitation of prisoners, or whether defendants had reason to know that more was required to discharge their affirmative protective duty, specifically, precluding or at least monitoring one-on-one contact between guards and prisoners.

Id. According to plaintiff, New York law and Cash put the City on notice of the potential danger raised by defendant Green.[10]  Plaintiff also cites to the widespread publicity of incidents of sexual abuse in prisons generally, and of young men by clergy generally.  Plaintiff further notes that plaintiff's youthful, gender non-conforming appearance should have put the City on notice of the threat.  In short, plaintiff suggests that allowing clergy to be alone and unmonitored in visits with young, homosexual and/or transgender and/or gender non-conforming inmates constitutes a moral certainty of sexual temptation.  This is not an argument supported by the allegations.  The Court rejects that there was a "moral certainty" that transgender and/or gender non-conforming inmates in unmonitored sessions with clergy will be sexually abused.

Separately, plaintiff contends that the City was on actual notice of the potential for harm caused by defendant Green because:  (1) another inmate allegedly reported Green's sexual abuse; (2) a correctional officer allegedly told plaintiff and a group of his peers that he suspected misconduct by Green; and (3) another correctional officer allegedly stated that rumors were circulating about what occurred during Green's counseling sessions.  Plaintiff also cites to the fact that he told a correctional officer he no longer wanted to attend religious counseling and to the fact that he received medical and psychological treatment at the facility.

Plaintiff does not allege that the relevant lawmakers/policymakers themselves were told about defendant Green's misconduct – by plaintiff or anyone

---

[10] But plaintiff also alleges that the City had a policy prohibiting such conduct – and indeed, Green's evasive actions suggest an awareness of such policy.

else.  (Indeed, plaintiff concedes that he never reported Green's misconduct.)
Nonetheless, plaintiff argues that there is an internal policy that requires high-level
officials be notified of suspicions and allegations of clergy-on-inmate sexual abuse –
as such, plaintiff argues that the City thus must have been on notice of the issue.

       Plaintiff's allegations regarding notice fail under Twombly and Iqbal:  they
require an interlocking chain of inferences built on inferences.  This is not a
situation, for example, where plaintiff contends (in anything but conclusory fashion)
that the City had received prior reports of clergy-on-inmate sexual abuse.
Similarly, plaintiff does not allege that an internal (or external) report regarding
such issue had been conducted.  Cf. Shepherd v. Powers, No. 11 Civ. 6860, 2012 WL
4477241, at *4 (S.D.N.Y. Sept. 27, 2012) (denying a motion to dismiss where a
Department of Justice report allegedly put Westchester County on notice that
Westchester County Jail had failed to protect inmates from harm and had failed to
provide inmates with adequate medical care).  There are no allegations that any
staff member in fact informed any policymaker of the wrongdoing.  See, e.g.,
Amnesty Am., 361 F.3d at 128 (holding that plaintiffs' evidence was sufficient to
survive summary judgment; it allowed an inference that the Town's police chief
witnessed and potentially encouraged the unconstitutional conduct and that "the
conduct was so blatantly unconstitutional that [the police chief's] inaction could be
the result of deliberate indifference to the protestors' constitutional rights.").

       The Court cannot plausibly infer that the relevant lawmakers/policymakers
must have been notified about the complaint and the suspicions of the two officers,

such that the need for action was "obvious."  First, the Complaint fails to cite to

specific policies and practices that would have resulted in the City's <u>policymakers</u>

being notified of the issue.  Second, the timing of the complaint and the statements

regarding the correctional officers' suspicions is not provided for in the Complaint.

As such, there is no indication as to whether the City was put on notice at a time

when its policymakers could have taken action to prevent the misconduct.  Third,

plaintiff's generalized allegations about concerns of sexual abuse in today's society

are insufficient.  The Court cannot plausibly infer that based on such generalized

assertions, clergy-on-inmate sexual abuse is both a concern in prison facilities and

that its policies and procedures are "substantially certain to result in the violation

of [plaintiff's] constitutional rights."  <u>See</u> <u>City of Canton</u>, 489 U.S. at 396 (O'Connor,

J., concurring in part).[11]

---

[11] Plaintiff relies heavily on <u>Qasem v. Toro</u>, 737 F. Supp. 2d 147 (S.D.N.Y. 2010) and
<u>Cash v. County of Erie</u>, 654 F.3d 324 (2011), but both are distinguishable.  In
<u>Qasem</u>, plaintiff's allegations revolve around the alleged misconduct of defendants
after a complaint was made and an internal investigation had commenced
regarding alleged sexual misconduct of plaintiff by a correctional officer.  The
plaintiff in <u>Qasem</u> alleged that the defendants were aware of the complaint and the
investigation and nonetheless failed to protect plaintiff from continued sexual
abuse.  Since an internal investigation had commenced, it was not implausible to
infer that City policymakers had been apprised of the potential problem.  In <u>Cash</u>,
the court determined that "a jury reasonably could have found that defendants
knew, by virtue of New York state law, that female prisoners in their custody faced
a risk of sexual abuse by male guards; that, by 1999 [when a complaint about such
conduct was reported and investigated], defendants also knew that [their policy]
was insufficient to deter such conduct . . . ."  654 F.3d 336, 339 (explaining that
defendant sheriff testified that although he could not recall the details of the 1999
complaint, "he acknowledged that the relevant findings would have been reported to
him.")  In <u>Cash</u>, the existence of the report and the investigation were sufficient to
have put the City on notice of the issue.  Plaintiff here alleges neither a report nor
an investigation.

Plaintiff's failure to allege facts supportive of an inference that the City had reason to know of the risk created by defendant Green requires dismissal of plaintiff's claim for municipal liability.

      iv.  <u>§ 1983 – Supervisory Liability</u>

Plaintiff contends that the DOC defendants "created and maintained a policy or custom pursuant to which unconstitutional practices occurred by failing to adopt a policy of monitoring one-on-one counseling visits and by failing to enforce existing policy requiring monitoring of Chaplains during visits to inmate housing areas." While the Court has found plaintiff has failed to allege an unconstitutional policy or practice insofar as the City is concerned, whether the individual defendants were sufficiently involved so as to face potential liability is a separate (albeit related) question.

Plaintiff believes that the Court should infer based on another inmate's purported complaint, the suspicions of two correctional officers, and general concerns about sexual abuse in prisons and by clergy more generally that the DOC defendants were on notice of the potential harm.[12]  In assessing this claim, an understanding of each DOC defendant's alleged role is necessary.

Defendant Schriro is the Commissioner of the DOC.  She is responsible for the management and control of all Department jails.  (Am. Compl. ¶ 17.)

---

[12] While the Complaint includes an allegation that other complaints had been issued against defendant Green, this contention is without supportive factual allegations and thus is insufficient as a matter of law.

Defendant Larry Davis is the Chief of Department of the DOC – he is the highest-ranking uniformed member of the Department and is responsible for the supervision, oversight, and discipline of the uniformed security staff.  (Id. at ¶ 18.)

Defendants Emmanuel Bailey and Joandrea Davis were the wardens of the two Rikers Island facilities when the alleged incidents occurred.  (Id. ¶¶ 19-20.) According to plaintiff, these individuals were "to be provided on a daily basis with reports of any officer, agent, or employee of the Department engaging in sexual activity with any inmate and other incident" at the facility.  (Id.)  They were responsible for reviewing and approving these reports, conducting investigations of the facility, and recommending disciplinary measures in the event of misconduct. (Id.)  Bailey and Davis also reviewed a weekly schedule of activities submitted by department chaplains, including Green.  (Id.)  Additionally, they authorized the delivery of inmates to defendant Green's counseling area and authorized admission of defendant Green to inmate housing areas.  (Id.)

Defendant Archana Jayaram was the Department's Associate Commissioner of Programs and Discharge Planning Services.  (Id. ¶ 21.)  Jayaram was responsible for supervising planning initiatives by program services, including the Office of Ministerial Services.  (Id.)

Defendant Florence Finkle is the Deputy Commissioner of the Office of Excellence.  (Id. ¶ 22.)  Finkle was (and is) responsible for ordering and supervising all investigations of incidents involving officers, agents, or employees of the Department who allegedly engage in sexual activity with inmates.  (Id.)

Although plaintiff's allegations are not entirely clear, he appears to contend that defendants Bailey, Joandrea Davis, Jayaram, and Finkle were on actual notice of the risk of harm to plaintiff.  Specifically, Bailey and Davis would have received reports from correctional officers regarding the complaint and the officers' suspicions.  Presumably, according to plaintiff, Bailey and/or Davis then must have notified Jayaram and Finkle about the issue.

Put another way, plaintiff contends that because correctional officers had concerns about defendant Green's conduct, they must have reported those concerns; the defendant wardens must have thus learned of the risk and notified the relevant Department personnel.  Plaintiff's Complaint as pled does not allow for such inferences.

First, while plaintiff's opposition papers cite to certain policies and procedures that require notification of the Warden's Office and Tour Commander and "others up the chain of command among both uniformed and program staff" for concerns of sexual abuse, the Complaint itself does not cite to any specific policies or procedures.  There is nothing from which the Court can infer that the DOC defendants were notified of the misconduct.

Second, the majority of cases cited by plaintiff involve circumstances where notice is either clear or easily inferred.  See, e.g., Noguera v. Hasty, No. 99 Civ. 8786, 2000 WL 1011564 (S.D.N.Y. 2000), report and recommendation adopted in part by 2001 WL 243535 (S.D.N.Y. Mar. 12, 2001) (plaintiff wrote a letter to a warden advising him of the issue); Kellogg v. New York State Dep't of Corr. Servs.,

No. 07 Civ. 2804, 2009 WL 2058560 (S.D.N.Y. July 15, 2009) (plaintiff wrote a letter
to the superintendent advising her of the issue); Qasem, 737 F. Supp. 2d at 152-53
(investigation had already commenced); Heisler v. Kralik, 981 F. Supp. 830, 837
(S.D.N.Y. 1997) (prison officials told the plaintiff's mother that they informed their
supervisor of the dangerous conditions).  In Morris v. Eversley, 205 F. Supp. 2d 234
(S.D.N.Y. 2002) (Chin, J.), plaintiff alleged that she provided a written report of the
assault to the wrongdoer's supervisor.  Id. at *242.  Facility policy required that the
superintendent determine whether the grievance was bona fide and deliver a
determination within a set period of time; so, the court accepted for purposes of the
motion to dismiss that the superintendent must have known about the grievance.
Id.  Unlike the case now before this Court, there was an allegation of the existence
of a written report of the assault and an allegation that that report had been given
to a supervisor, who then would have been under an obligation to provide the report
to the superintendent.

Here, plaintiff's only contention is that one correctional officer was informed
of the issue by another inmate and two others had suspicions.  Without more, the
Court cannot plausibly infer that the DOC defendants were put on notice of the
issue.

For these reasons, plaintiff's claim for supervisory liability must be
dismissed.

b.  State Law – Negligent Hiring, Retention, Training, Supervision

In addition to the standard elements of negligence, to state a claim for

negligent supervision or retention under New York law, a plaintiff must show:  "(1)

that the tort-feasor and the defendant were in an employee-employer relationship;

(2) that the employer knew or should have known of the employee's propensity for

the conduct which caused the injury prior to the injury's occurrence; and (3) that the

tort was committed on the employer's premises or with the employer's chattels."

Ehrens v. Lutheran Church, 385 F.3d 232, 235 (2d Cir. 2004) (internal quotation

marks and citations omitted).  "A cause of action for negligent hiring or retention

requires allegations that the employer failed to investigate a prospective employee

notwithstanding knowledge of facts that would lead a reasonably prudent person to

investigate that prospective employee."  Bouchard v. New York Archdiocese, 719 F.

Supp. 2d 255, 261 (S.D.N.Y. 2010) (internal quotation marks, alterations, and

citation omitted).

Here, plaintiff argues that the City and the DOC defendants were on notice

to use reasonable care in the hiring, retaining, training, and supervising of

defendant Green because of "prior grievances, staff reports, and rumors."  (Pl.'s

DOC Opp'n at 19.)  However, for all of the reasons stated above, plaintiff has failed

to allege facts allowing for a plausible inference that the City and DOC defendants

knew or should have known about the need to further investigate and monitor

defendant Green.  Accordingly, plaintiff's state law negligence claim fails.

24

c.  <u>State Law – Respondeat Superior</u>

Plaintiff's claim of respondeat superior too fails as a matter of law.  "Sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's business, even when committed within the employment context."  <u>Adorno v. Corr. Servs. Corp.</u>, 312 F. Supp. 2d 505, 517 (S.D.N.Y. 2004). As a result, plaintiff cannot make out a claim for <u>respondeat superior</u> against the City in this case.

d.  <u>State Law – Discrimination</u>

Plaintiff alleges that "[d]efendants . . . harassed and discriminated against plaintiff on the basis of, <u>inter alia</u>, sex, sexual orientation, and disability" in violation of New York Civil Rights Law § 40-c.  (Am. Comp. ¶ 145.)  Plaintiff does not allege any facts that would support an inference that either the City or the DOC defendants discriminated against or otherwise treated plaintiff or other males, homosexuals, transgender persons, and/or gender non-conforming individuals differently from other inmates.  As a result, plaintiff's discrimination claim fails.

IV.     REQUEST FOR LEAVE TO AMEND

In the alternative, plaintiff seeks leave to amend his Complaint to add allegations contained in two newspaper articles.  First, plaintiff seeks to add allegations relating to a 2009 article published in the New York Post entitled "Jail Bigs Were 'Brown' Nosers."  (<u>See</u> Pl.'s DOC Opp'n at 19-20.)  According to plaintiff, this article illustrates that Department supervisors knew by June 21, 2011 that Green "had engaged in conduct constituting undue familiarity with [inmate] Inga

Marchand, including bringing in contraband and conducting unmonitored one-on-one cell visits, indisputably giving rise to reason to know more or better monitoring and supervision of Green and other chaplains was necessary . . . ." (Id. at 20.) Second, plaintiff seeks to add in allegations arising from a July 11, 2011 news article about a New York State Department of Corrections and Community Supervision ("DOCCS") chaplain who was arrested in July 2011 for paying an inmate to perform oral sex on him in a chaplain office. (Id. at 21.)  Plaintiff explains that this article is about Queensboro Correctional Facility, which is just five miles from Rikers Island and concerns similar conduct to that alleged here.  (Id. at 22.) Plaintiff argues:  "There can be no question that, taken together, these two incidents were more than sufficient to put the City on notice as to the need to take further precautionary measures with respect to enforcing prohibitions against unsupervised access to cells and inmate housing areas, adopting policies to ensure adequate monitoring of one-on-one counseling sessions, and specifically to take further measures, up to and including dismissal, to ensure defendant Green did not engage in further undue familiarity or sexual abuse of inmates held in City facilities." (Id. at 21-22.)

The Court denies plaintiff's request to amend his Complaint to add these allegations because doing so would be futile.  The 2009 article is not about defendant Green and concerns a state correctional facility.  Such incident is insufficient to create a plausible allegation that either the DOC defendants or the City was or reasonably should have been on notice that its policies with respect to

its chaplains were insufficient.  As for the 2011 article, that article post-dates the alleged one-on-one counseling sessions with Green; because plaintiff has not alleged that unmonitored one-on-one counseling sessions with Green occurred during plaintiff's second period of incarceration, the existence of the article is inapposite.

However, plaintiff is granted permission – to the extent he so desires – to file an amended Complaint in connection with his supervisory liability claim in order to add allegations about the specific policies and practices that govern reporting complaints and suspicions of sexual abuse by staff of inmates.

V.      CONCLUSION

For the aforementioned reasons, defendants' motion to dismiss pursuant to Rule 12(b)(6) is hereby GRANTED.  Because the Court did not rely on Exhibit A of the City's papers submitted in reply to plaintiff's opposition to the City's motion to dismiss, plaintiff's Motion to Strike is DENIED AS MOOT.   Defendants' motion to bifurcate is similarly DENIED AS MOOT.

The status conference currently scheduled for **July 11, 2014** at **12:00 p.m.** shall proceed as scheduled for the remaining parties.

The Clerk of Court is directed to terminate the motions at ECF Nos. 25, 41, and 56.

SO ORDERED.

Dated:        New York, New York
              June 10, 2014

_____
              KATHERINE B. FORREST
              United States District Judge

CC:
Kevin Green
199-08 115th Avenue
St. Albans, NY 11412
PRO SE

28